829 So.2d 390 (2002)
CEDARS HEALTHCARE GROUP, LTD., d/b/a Cedars Medical Center, Petitioner,
v.
Margaret M. FREEMAN, Respondent.
No. 3D02-1174.
District Court of Appeal of Florida, Third District.
November 6, 2002.
Parenti, Falk Waas, Hernandez & Cortina and Gail Leverett Parenti, Coral Gables, for appellant.
Robert Rossano, Miami, for appellee.
Before COPE and LEVY, JJ., and NESBITT, Senior Judge.

ON MOTION FOR REHEARING
NESBITT, Senior Judge.
On consideration of Respondent's motion for rehearing, we deny the motion, withdraw *391 the opinion dated September 4, 2002, and substitute the following opinion.
Cedars Healthcare Group, d/b/a Cedars Medical Center, has petitioned for a writ of certiorari, seeking to quash a discovery order. We grant the petition and quash the order at issue. Certiorari review is proper, as there is no adequate remedy by appeal, and the order departs from the essential requirements of law. See Allstate Insurance Co. v. Langston, 655 So.2d 91 (Fla.1995).
The facts which precipitated the order are as follows. In 1999, Margaret M. Freeman was admitted to the Cedars psychiatric ward. She filed the underlying action against Cedars, alleging that during her stay, she was physically and sexually assaulted at least twice by at least two male patients, and that Cedars was negligent in failing to protect her from these dangerous fellow patients. Freeman served Cedars with a request for production of:
Any and all photographs taken of all the male patients who were present at the psychiatric ward of the Defendant hospital from March 12, 1999 through March 15, 1999.
Cedars objected to the request as overly broad and burdensome, and argued that it improperly sought information which implicated the identity of other patients in the psychiatric ward, thus violating their privacy rights. Freeman filed a "Motion to Overcome Patient Confidentiality and/or Work Product Privilege and In Camera Inspection," alleging that she needed to look at the photos to identify her assailants. The trial court granted Freeman's motion.
Cedars relies on Amente v. Newman, 653 So.2d 1030 (Fla.1995), to argue that the plaintiff's discovery request violates the privacy rights of their non party psychiatric patients. In Amente, the Supreme Court allowed certain records to be provided to the plaintiff in a medical malpractice action, but required that all identifying information be redacted from those records. In the instant case we conclude that the photos at issue are exactly the type of identifying information that Amente concluded would not be subject to discovery.
The order at issue impinges upon the privacy rights of the non-party patients, and threatens to violate the patient/psychotherapist privilege codified in section 90.503(2), Florida Statutes (2001), as well as section 394.4615, Florida Statutes (2001), providing for the confidentiality of clinical psychiatric records. The reason for the latter privilege is to enable a person suffering from mental, emotional, or behavioral disorders, to seek services and treatment without being needlessly exposed to public scrutiny, as it is clearly to society's advantage to encourage people experiencing such problems to obtain assistance.
Here, plaintiff has not demonstrated that she has a compelling need for the discovery that outweighs the constitutional privacy rights of these non-party psychiatric patients. The hospital may be exposed to liability regardless of whether the alleged acts were performed by patients or other hospital workers, even without the names and faces of the alleged assailants. Even assuming the names are withheld, the photos may lead to inadvertent discovery of the patients' identities. Absent demonstrating such a need, the privacy rights of the non-party patients must prevail. See Delta Health Group, Inc. v. Williams, 780 So.2d 337 (Fla. 5th DCA 2001); Community Psychiatric Centers of Florida, Inc. v. Bevelacqua, 673 So.2d 948 (Fla. 4th DCA 1996) (concluding that although identities of patients who witnessed an accident at the defendant psychiatric *392 facility might be relevant to rebut defendant's contention that plaintiff contributed to the accident by his own negligence, the plaintiff's need for the information would not outweigh the right of privacy of the nonparty patients).
It is not enough to argue that plaintiff may be prohibited from using the photos in any suit against the patients or may be prevented from disclosing the photos to parties other than counsel. An in camera (i.e. by a judge) inspection cannot satisfy the claimant's needs as only she can identify her assailant. When the hospital case is tried, the court clerk assigned to the proceeding as well as the court reporter will certainly recognize prominent patients by reason of wealth, social position or other status, if there are any. A substantial number of persons have been and are being protected by the patient privilege and receive proper treatment enabling them to perform satisfactorily in society directly because of the protection outlined. The possible collateral consequences of revealing the photographs of these patients may well strike the heart of some individual as we have attempted to describe.
Accordingly, we grant the petition sought and quash the order under review without prejudice to renew, in the event claimant's counsel is able to formulate and craft a test that will satisfy society's concerns. As a threshold matter, before the court allows such discovery, however, the court should be satisfied that the claimant is competent to testify as to what occurred at the time of the incidents. While she is presumed competent to testify unless adjudicated otherwise, the circumstances of her confinement and treatment may have rendered her unable to do so. There is no point in proceeding with this delicate discovery if her recollection of the events at issue is of no evidentiary value. Once overcoming this hurdle, it will, of course, boil down to the assessment of weight and credibility by trier of fact at trial.
LEVY, J., concurs.
COPE, J. (dissenting).
We should deny certiorari. There is no impermissible infringement of privacy rights.

I.
The majority opinion contains the unspoken assumption that there is a special stigma associated with mental illness. We should reject such an approach. The law should take the view that mental illness is an illness, like any other.
For purposes of analysis, we should ask the question what the rule should be in the context of an ordinary inpatient hospitalization. The fact that this was a hospitalization for mental illness makes no difference.

II.
The plaintiff in this case voluntarily admitted herself into a hospital operated by Cedars Healthcare Group, for treatment in the psychiatric ward. She suffers from bipolar disorder.
The plaintiff was an inpatient for three days. So far as this record indicates, the facility was an ordinary hospital ward in which the plaintiff resided in an unlocked room, and other patients had their own rooms on the ward.
The plaintiff alleges that on two occasions during her hospitalization, she was sexually assaulted in her room. There were two different assailants, who appeared to be patients. She has given a physical description of the assailants in her deposition. The plaintiff believes she saw one of the assailants again on the ward the day following the assault, because the assailant took an article of her clothing away *393 with him, and she saw the individual with that article of clothing the following day.
Over the hospital's objection, the trial court has ordered the production of the photographs of the male patients who resided in the psychiatric ward during the three days that the plaintiff was there. Names and other identifying information are not to be disclosed. The hospital has petitioned for a writ of certiorari, arguing that the discovery order impermissibly infringes on the privacy rights of the other patients.

III.
In considering an objection that discovery will result in an undue invasion of privacy, the court must balance the competing interests. Rasmussen v. South Florida Blood Service, 500 So.2d 533, 535 (Fla.1987).
As a threshold matter, it must be shown that there is a reasonable expectation of privacy in the information which is sought to be protected.
In that regard, it makes a difference whether the requesting party is seeking to discover fact witnesses (which is the situation now before us), or whether the requesting party is seeking to obtain confidential medical information contained in patient files. See, e.g., Amente v. Newman, 653 So.2d 1030 (Fla.1995).
Let us assume the hypothetical case of a patient who slips and falls in the hallway of an ordinary medical hospital, where the fall is witnessed by other patients. It would seem obvious that in a slip-and-fall lawsuit, the plaintiff patient would be able to obtain the names of the other patients who observed the incident.
In that hypothetical, disclosure of the identity of the patient-witnesses is appropriate. They are being sought as witnesses. The contents of their medical records are not being sought.
In the hypothetical example, there is no reasonable expectation of privacy which would preclude the discovery. That is so because in the hypothetical, the plaintiff and witnesses were all patients who were within sight of each other at the time of the accident. Their identities were not concealed or secret from each other. Naturally a protective order could be entered which would require the discovery to be held confidential and not disclosed outside the lawsuit.
In North Broward Hospital District v. Lucas, 448 So.2d 622 (Fla. 4th DCA 1984), the plaintiff brought suit over alleged malpractice in the hospital's delivery room. While quashing the discovery order as overbroad, the court said, "Our action should not be read as preventing the respondent/plaintiff from obtaining names and addresses of other patients who were present in the labor room and who may be potential witnesses." Id. at 623.
In Big Sun Healthcare Systems, Inc. v. Prescott, 582 So.2d 756 (Fla. 5th DCA 1991), the claim was improper treatment of a child (who died) in an emergency room. The court held that the emergency room's patient sign-in logs were subject to production. That was so because the logs contained "no information about medical problems. Every patient who signs in can view the entries made by the patients who signed in before." Id. at 758. There was thus no expectation of patient privacy in the patient sign-in logs.
In Coastal Physician Services of Broward County, Inc. v. Ortiz, 720 So.2d 324 (Fla. 4th DCA 1998), the court held that health care invoices were subject to production. Patient privacy was not infringed because the documents consisted of "billing information which contains no privileged information and lists only names and *394 addresses that are necessary for respondent to ascertain the size and membership of the class...." Id. at 327.
Conversely, it has been held that on a proper showing the confidential medical information of third parties can be disclosed, provided that all identifying information is excised. Amente, 653 So.2d at 1032-33. There the plaintiff sought to test a physician's assertion that he always treated a particular disorder the same way. The court compelled the production of the records of the physician's other patients with the same disorder, on condition that all identifying information be removed. Id. at 1033. The court found that the patients' right of privacy was "protected by the trial judge's requirement that all identifying information be redacted from the medical records." Id.[*]
Insofar as pertinent here, the logic of the above cases dictates thatat least in the context of ordinary medical carediscovery of fact witnesses (who are also patients) is permissible, so long as there is no intrusion into the patients' confidential medical information.

IV.
While the foregoing cases were decided in the context of ordinary medical treatment, the principles are fully applicable here, where the lawsuit involves the psychiatric ward of a hospital.
The order in this case is for the production of photographs of the male patients who resided in this hospital ward at the same time that the plaintiff did. Here, too, the threshold question is whether there is any reasonable expectation of privacy which is infringed by the discovery order. There is not.
So far as this record indicates, this was a hospital ward like any other. As between patients on a particular ward, there is no expectation of privacy in a patient's facial features. As patients move around the ward, they see each other. As patients come and go for appointments, they see each other. As visitors come into the ward to visit a patient, the visitors will see other patients. The patients are presumably referred to by name, as would be true in any other hospital setting.
The present discovery order is simply for the discovery of facts relating to the plaintiff's case. The plaintiff has not requested, and has no interest in, the psychiatric or medical history of those who were on the ward at the same time she was. The production request at this point is only for photographs, without names or other identifying information. The discovery order is entirely permissible and does not depart from the essential requirements of law.
The majority opinion is preoccupied with the unspoken idea that there is a particular stigma that is associated with hospitalization for mental health treatment. We should not indulge that presumption, and should take the view that mental illness is an illness like any other. However, even if it is assumed for purposes of discussion that there may be some sensitivity on the part of any of the patients for such hospitalization, that sensitivity has always been dealt with in this context by the entry of a confidentiality order. Such an order has been entered in this case.
*395 The majority opinion relies on Delta Health Group, Inc. v. Williams, 780 So.2d 337 (Fla. 5th DCA 2001), but that case is not on point. The production request was quashed on grounds of overbreadth. Id. at 338. The court expressly declined to reach any issue of privacy rights of nonparty residents of the nursing home. Id. at 339 n. 1.
The majority opinion relies on Community Psychiatric Centers of Florida, Inc. v. Bevelacqua, 673 So.2d 948 (Fla. 4th DCA 1996). That case is similar to this one, and is wrongly decided. In Bevelacqua, the plaintiff was a patient who was injured when a chair on which he was sitting collapsed. Id. at 949. He requested the names and addresses of the other patients who were present and witnessed the incident. Id. The trial court ordered such disclosure, with the proviso that the witnesses could file their own objections if they wished to do so. The Fourth District (over a dissent) quashed the order on the grounds of patient privacy rights. Then-Judge Pariente's dissent pointed out that the effect of the ruling was to give the defendant mental health center access to the eyewitnesses and deny the plaintiff access to the same witnesses.
Respectfully, the Bevelacqua majority failed to examine the question whether the patient-witnesses had a reasonable expectation of privacy which would be infringed by the discovery request. The plaintiff and the eye witnesses were not only patients at the same time but were within eyesight of each other. As between each other, there was no reasonable expectation of privacy that would preclude the disclosure of the patients as witnesses to the accident. The Bevelacqua ruling is hard to square with the Fourth District's earlier decision in North Broward Hospital District v. Lucas where, in a malpractice case, the court opined that the plaintiff would be permitted to obtain "the names and addresses of other patients who were present in the labor room and who may be potential witnesses." 448 So.2d at 623.
In the present case, the majority opinion goes so far as to express concern that the production of the photographs may be viewed by the judge, court staff, or the court reporter, who may recognize someone who is depicted in the photographs. Opinion at 4. That concern is being expressed, I suggest, only because this is a mental health hospitalization and would not be articulated in the case of any other hospitalization. More to the point, the judge, counsel, and court personnel can be expected to abide by the terms of any confidentiality order which may be entered.
The majority opinion suggests that there may be an issue regarding the psychotherapist patient privilege under subsection 90.503(2), Florida Statutes (2001). Respectfully, I fail to see how the photographs fall within any such privilege.
The majority opinion cites section 394.4615, Florida Statutes (2001), providing for the confidentiality of clinical psychiatric records. That statute, however, authorizes the release of such records when a court orders such release on good cause. Id. § 394.4615(2)(c). Good cause has been shown here.
In sum, the order now before us is within the scope of the discovery rules and the applicable statute. There is no reasonable expectation of privacy which is infringed by the discovery order. Accordingly, certiorari should be denied.
NOTES
[*] The Amente court quashed several decisions of this court which had held that there could be no discovery into a non-party's medical records. Id. at 1031-33 (quashing in part North Miami Gen. Hosp. v. Royal Palm Beach Colony, Inc., 397 So.2d 1033 (Fla. 3d DCA 1981); Teperson v. Donato, 371 So.2d 703 (Fla. 3d DCA 1979); Argonaut Ins. Co. v. Peralta, 358 So.2d 232 (Fla. 3d DCA 1978)).